A97A1792. YOUNG v. THE STATE.
(494 SE2d 226)

ANDREWS, Chief Judge.

Thomas Odell Young III, shot and killed Tina Michelle Brown. Young was indicted for murder, felony murder, voluntary manslaughter, aggravated assault and possession of a firearm during the commission of a crime. A jury found him not guilty of murder and felony murder and guilty on the remaining charges. In entering judgment, the trial court merged the aggravated assault conviction into the voluntary manslaughter conviction.

On appeal from the judgment entered on the guilty verdicts, Young claims the State failed to prove beyond a reasonable doubt that his self-defense claim was not viable and that the evidence was otherwise insufficient to support the convictions. We find the evidence was sufficient to allow the jury to reject the self-defense claim and to find Young guilty beyond a reasonable doubt. Accordingly, we affirm.

The evidence showed that Brown and Young had been divorced for about a year at the time of the shooting. On the day of the shooting, Brown's mother drove her to Young's residence so that Brown could retrieve an address book that she claimed Young had recently stolen from her car. Just prior to driving there, Brown called 911 and requested that a police officer be sent to meet her at Young's residence. Pursuant to that call, an officer was dispatched to Young's residence. Brown and her mother arrived at Young's residence before the police officer arrived. Young's mother let Brown into the residence, and Brown's mother remained outside.

Inside the residence, a heated argument ensued between Brown and Young. According to Young and his mother, Brown pulled a pistol, pointed it at both of them, then turned away from them and started to walk toward the door of the residence. Young's mother testified that when Brown reached the door, she turned around, walked toward her a few steps, raised the pistol and fired two shots at her which missed. Ms. Young testified that Young was positioned by a corner where he could not see Brown turn around and fire the shots. Ms. Young testified that when the shots were fired, she exclaimed,

"She shot, she shot," and that she moved over out of Brown's line of fire. She testified that when Young heard her say this, he retrieved a rifle from the laundry room located a few feet away. Ms. Young testified that when she saw her son with the rifle, she grabbed his arm, said "Put it down," and the rifle fired into the ceiling. At that point, Ms. Young said her son reached the rifle around the corner and fired two or three shots without aiming at Brown. Ms. Young testified that she looked around the corner and saw Brown lying on the floor.

Young gave a statement to police in which he said that during an argument at his residence, Brown pulled a pistol and pointed it at him and his mother. He said that in response, he retrieved the rifle because he was afraid of Brown. He stated that his mother tried to take the rifle away from him and it fired into the ceiling while they were struggling. Although Young stated he was aware that Brown had walked away toward the door of the residence as he went to get the rifle, he told the officer that he could not see Brown from where he was standing with the rifle because he was behind a wall. He stated it was "highly possible" that when the rifle was fired into the ceiling, Brown was walking toward the door. Young said he peeked around the corner at some point and saw Brown "holding, pointing, you know, still holding the gun." When asked if he heard or saw Brown fire the pistol, Young responded, "I don't know. . . . I'm not a hundred percent sure if she shot the gun." Although Young's statement indicates that he fired the rifle after he broke free from his mother, it does not describe the manner in which he did so. Young told the officers that after he stopped firing, he realized that Brown had been hit by a bullet when he peeked around the corner again and saw her lying on the floor. Young did not testify at trial.

Brown's mother testified that while she was waiting outside the residence, she saw Ms. Young through a window of the residence struggling with a man. She testified that she then heard three to five shots fired in rapid succession and that about that time, the police officer dispatched by the 911 call arrived on the scene. The officer testified that when he approached Young's residence, the door was open and he saw Brown lying on the floor on her back with a gunshot wound in her forehead. She was lying about ten feet from the door with her head toward the door. When Brown was moved by paramedics called to the scene, a pistol was found on the floor under her body. Brown's mother testified that Brown had received a pistol as a Christmas gift a few days before the shooting and that it looked like the pistol recovered at the scene.

During their investigation, police recovered the rifle fired by Young and the pistol found on the floor under Brown's body. The rifle was a 22 caliber semi-automatic and the pistol was a 22 caliber automatic. Police also recovered four 22 caliber cartridge cases and two

22 caliber bullets. One bullet was retrieved from a hole in the ceiling of Young's residence, and the other bullet was found in Brown's head during an autopsy of her body. Tests conducted at the State Crime Lab showed that both bullets were fired from Young's rifle, and all four cartridge cases were extracted and ejected from Young's rifle. No additional bullets, bullet holes or cartridge cases were found.

Young admitted that he shot and killed Brown but claimed that he acted in self-defense. "[A] person is justified in using force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent death or great bodily injury to himself or a third person or to prevent the commission of a forcible felony." OCGA § 16-3-21 (a). "When a defendant presents evidence that he was justified in using deadly force, the burden is on the State to disprove the defense beyond a reasonable doubt." *Andrews v. State*, 267 Ga. 473, 474 (480 SE2d 29) (1997). Whether or not the circumstances of the case are such that they would excite the fears of a reasonable man to the point that he felt it necessary to use deadly force is a question for the jury. *Anderson v. State*, 245 Ga. 619, 623 (266 SE2d 221) (1980). Moreover, on appeal from a criminal conviction, the evidence is examined in a light most favorable to the verdict. As an appellate court, we do not weigh the evidence or determine the credibility of the witnesses but only determine whether the evidence was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), for the jury to find Young guilty beyond a reasonable doubt. *Parker v. State*, 220 Ga. App. 303 (469 SE2d 410) (1996).

Based on the evidence, the jury could have concluded that although Brown pulled out a pistol while arguing with Young and his mother, she then turned away and was walking toward the door of the residence when the shot from the rifle fired into the ceiling caused her to turn and face in the direction where Young and his mother were concealed by a wall. The jury could have further concluded that Young broke free from his mother, reached the rifle around the corner of the wall and blindly fired three shots in Brown's direction, one of which struck her in the forehead causing her to fall on her back toward the door. The physical evidence found at the scene, including bullets and cartridge casings, supports the conclusion that Brown never fired the pistol and that all the shots were fired from the rifle by Young. On the evidence before it, the jury could have reasonably concluded that Young acted out of sudden passion or anger in killing Brown and that, at the time, it was not necessary for him to do so in order to protect himself or his mother. *Thomas v. State*, 184 Ga. App. 131, 132 (361 SE2d 21) (1987).

The facts were sufficient to allow the jury to conclude beyond a reasonable doubt that Young did not justifiably use deadly force to

kill Brown. Id. Further, there was evidence sufficient to show that, as a result of an argument with Brown and because Brown pointed a pistol at Young and his mother, Young shot and killed Brown out of "a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." OCGA § 16-5-2 (a). Accordingly, the evidence was sufficient to support the guilty verdicts for voluntary manslaughter and possession of a firearm in the commission of a crime. *Williams v. State*, 126 Ga. App. 454, 457 (191 SE2d 100) (1972); *Thomas*, supra; OCGA §§ 16-5-2 (a); 16-11-106.

*Judgment affirmed. Blackburn, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED NOVEMBER 4, 1997 —
RECONSIDERATION DENIED NOVEMBER 20, 1997 — ▊▊▊▊▊▊

*Richard C. Sutton, Thomas M. Rego*, for appellant.
*James R. Osborne, District Attorney, Grover W. Hudgins, Fred A. Lane, Jr., Assistant District Attorneys*, for appellee.